IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONALD WATKINS, Jr.**<br>**Plaintiff,**<br>v.<br>**THE PHILADELPHIA LAND BANK**<br>**Defendant.** | **CIVIL ACTION NO. 18-4242** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                    **March 29, 2021**

Plaintiff Donald Watkins filed suit against Defendant Philadelphia Land Bank to quiet title to the property located at 869 N. 20th Street (the "869 Property" or "869 Lot"). Plaintiff claims ownership of the property through adverse possession. Defendant now moves for summary judgment.[1] For the reasons set forth below, the motion will be denied.

### I.   BACKGROUND[2]

The Philadelphia Housing Development Corporation ("PHDC") acquired the 869 Property by deed on June 20, 1980. The 869 Property is a vacant lot in North Philadelphia and is surrounded by row homes on the east and west sides and an aluminum fence on the north and south sides.

One of the homes adjacent to the 869 Property is at 871 N. 20th Street (the "871 House"). The 869 Property is fenced off from the public, but there is no separation between the fenced in backyard of the 871 House and the 869 Property.[3] As Plaintiff has explained, "[w]hen you walk

---

[1] *See* Def.'s Mot. Summ. J. [Doc. No. 45].

[2] Many of the relevant facts are not disputed; where they are disputed, they are viewed in the light most favorable to Plaintiff as the non-moving party.

[3] A single fence extends across the backyard of the 871 House and the 869 Property.

up our backyard, you walk directly . . . in to the yard."[4] The 869 Property can only be accessed through a gate on the north fence and from the backyard of the 871 House.[5]

Plaintiff's parents, Donald Watkins, Sr. and Lena Watkins, purchased the 871 House in August 1980. According to Plaintiff, the PHDC told his parents that the 869 Lot was included with the sale of the 871 House as a "side yard."[6] However, the deed to the 871 House does not include the 869 Lot.[7] Plaintiff asserts that for 37 years—from 1980 to 2017—he and Watkins, Sr. "always maintained ownership of the [869 Lot], and never contacted or acknowledged anyone else, including PHDC and Defendant as the owner of the backyard."[8]

Plaintiff claims that they excluded others from entering the 869 Property by keeping the gates locked and securing the lot from public access, including from the PHDC.[9] He also asserts that he and his family used the property as an extension of their backyard, by, among other things, storing possessions, holding birthday parties and gatherings, laying concrete on parts of it, planting grass and a flower bed, building a mobile basketball court and a dog house, and keeping guard dogs on the lot.[10]

---

[4] Tr. of Mar. 22, 2006 Hr'g [Doc. No. 50-1] at 10–11.

[5] There is also a second gate on the south fence that leads to the backyard of the 871 House. The backyard of the other adjacent house has a cement or brick wall that separates it from the 869 Lot. Tr. of Mar. 22, 2006 Hr'g [Doc. No. 50-1] at 21. Plaintiff asserts that no one from the other adjacent property ever used the 869 Lot. Watkins Dep. [Doc. No. 50-2] at 14–15.

[6] Watkins Dep. [Doc. No. 50-2] at 11–12.

[7] Deed to 871 N. 20th Street [Doc. No. 45 Exh. B].

[8] Amend. Compl. [Doc. No. 9] ¶ 23.

[9] *Id.* ¶ 11 (Factual History).

[10] *Id.* ¶ 12 (Factual History), Tr. of Mar. 22, 2006 Hr'g [Doc. No. 50-1] at 9–10; Watkins Dep. [Doc. No. 50-2] at 13–16.

In early 2006, Watkins, Sr. began asserting that he was the owner of the 869 Property through adverse possession.[11] On March 10, 2006, PHDC, which at the time held title to the 869 Property, issued a 15-day eviction notice letter for the property to Watkins, Sr.[12] In response, Watkins, Sr., with the help of Plaintiff, filed an action in the Eastern District of Pennsylvania seeking a temporary restraining order to prevent the PHDC from taking the property. Watkins, Sr. also filed a complaint alleging civil rights violations, asserting adverse possession, and challenging the eviction.[13] The 2006 federal action was dismissed for lack of jurisdiction, but the parties stipulated that no action would be taken by PHDC until ownership of the property was resolved.[14] On November 22, 2006, Plaintiff and Watkins, Sr. filed a state court action against PHDC to quiet title.[15] According to Plaintiff, the state court action "sat there for about three years. They never responded. They never even filed an answer to it."[16] The state court action was dismissed by the plaintiffs without prejudice in 2008.[17]

On April 7, 2015, Watkins, Sr. unsuccessfully attempted to record an "Adverse Possession Deed" to the 869 Property with the City of Philadelphia Department of Records. The instrument was returned as "Not in recordable form" because it used the word "deed" in the title instead of claim.[18] In the "Adverse Possession Deed," Watkins, Sr. states that he "acquired title

---

[11] Letter from Donald Watkins, Sr. to Anthony C. McIntosh (Feb. 17, 2006) [Doc. No. 2] at 7; Letter from Donald Watkins, Sr. to City Councilman Darrell L. Clarke (Mar. 2, 2006) [Doc. No. 2] at 8–9.

[12] Letter from PHDC to Donald Watkins, Sr. (Mar. 10, 2006) [Doc. No. 2] at 10.

[13] *See* Civil Action No. 06-1219.

[14] Tr. of Mar. 22, 2006 Hr'g [Doc. No. 50-1] at 26.

[15] Amend. Compl. [Doc. No. 9] ¶ 29.

[16] Watkins Dep. [Doc. No. 50-2] at 30.

[17] Amend. Compl. [Doc. No. 9] ¶ 30.

[18] Document Problem Notice, City of Phila. Dept. of Records [Doc. No. 50-3].

in fee, by twenty-one years adverse possession," and that on November 5, 2005, his possession "was succeeded therein by Donald Watkins Junior, who continued in possession to this present."[19] Later that year, on December 28, 2015, Defendant Philadelphia Land Bank acquired PHDC's interest in the 869 Property by deed from PHDC. Following its acquisition of the 869 Property, on October 17, 2016, Defendant mailed an eviction notice to Plaintiff, but Plaintiff alleges that Defendant took no action to remove Plaintiff from the property. On October 1, 2018, Plaintiff brought this quiet title action, under diversity jurisdiction, asserting adverse possession.

Although the disposition of the 871 House is not at issue in this action, its history may be relevant. The 871 House was purchased by Plaintiff's parents in 1980. On November 5, 2005, Plaintiff's father transferred to Plaintiff a 45% interest in the 871 House and retained a 55% interest for himself.[20] Plaintiff testified that, except for a few brief periods, he lived at the 871 House from 1980 through July of 2017, when he moved to Texas. Plaintiff's father, Watkins, Sr. moved out of the 871 House in 2018 and passed away that same year. The 871 House later was foreclosed upon and U.S. Bank took the property.[21]

## II. LEGAL STANDARD

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[22] Summary judgment is appropriate when the record shows "that there is no genuine dispute as to any material fact and the movant is

---

[19] *Id.* at 3.

[20] Plaintiff's mother passed away some time prior to 2006.

[21] Watkins Dep. [Doc. No. 50-2] at 27–28. It appears that the foreclosure on the 871 House began in 2014, but the bank did not take possession until 2018. *See* Foreclosure Action [Doc. No. 45 Exh. C.]; Watkins Dep. [Doc. No. 50-2] at 26.

[22] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

entitled to judgment as a matter of law."[23] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[24] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[25]

In evaluating a summary judgment motion, a court may not weigh the evidence or make credibility determinations.[26] The court "must view the facts in the light most favorable to the non-moving party," and must make every reasonable inference in the non-moving party's favor.[27] However, the party opposing summary judgment must still support each essential element on which the party has the burden of proof with concrete evidence in the record.[28]

### III. DISCUSSION

Under Pennsylvania law, in order to claim title by adverse possession, an individual must prove "actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years."[29] An adverse possession claim may be brought against an agent of a municipality that "holds previously private property for possible future sale,"[30] and the Pennsylvania Supreme Court has held open the possibility that two or more individuals may "jointly claim adverse possession as cotenants."[31]

---

[23] Fed. R. Civ. P. 56(a).

[24] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[25] *Id.*

[26] *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[27] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[28] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[29] *Recreation Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa. Super. Ct. 2008) (citations omitted).

[30] *City of Phila. v. Galdo*, 181 A.3d 1289, 1295 (Pa. Commw. Ct. 2018), *aff'd*, 217 A.3d 811 (Pa. 2019).

[31] *Conneaut Lake Park v. Klingensmith*, 66 A.2d 828, 829 (Pa. 1949) (emphasis omitted).

### A. Plaintiff cannot claim possession through privity

Plaintiff primarily argues that he has gained possession of the 869 Property with his father's possession.[32] Plaintiff asserts that adverse possession ripened into good title in 2001,[33] and that Plaintiff acquired "full possession of 869 North 20th Street after his [father] died on August 21, 2018" because "Plaintiff was in privy with his father when the property was passed from the father to son."[34] To the extent Plaintiff depends upon his father's claim. this theory is foreclosed as a matter of law.

In *Baylor v. Soska*, the Pennsylvania Supreme Court held that "the only method by which an adverse possessor may convey the title asserted by adverse possession is to describe in the instrument of conveyance by means minimally acceptable for conveyancing of realty that which is intended to be conveyed."[35] The Pennsylvania Supreme Court explained its rationale:

> [T]he law mandates that a person asserting a claim of adverse possession make this assertion openly and notoriously to all the world. There must be no secret that the adverse possessor is asserting a claim to the land in question. If the adverse possessor's claim is to be passed on to a successor in title, therefore, there must be some objective indicia of record by which it can be discerned with some degree of certainty that a claim of title by adverse possession is being made and that the duration of this claim has been passed on to a successor in title.[36]

The deed of the 871 House, by which Watkins, Sr. conveyed a 45% interest to Plaintiff in 2005, makes no mention and contains no description of the 869 Property.[37] This transaction was insufficient to transfer an interest in the 869 Property under *Baylor*. Plaintiff cannot assert, as a

---

[32] *See* Amend. Compl. [Doc. No. 9] ¶¶ 25–30, 48.

[33] *Id.* ¶ 48.

[34] Resp. Opp'n Mot. for Summ. J. [Doc. No. 50] at 6.

[35] *Baylor v. Soska*, 658 A.2d 743, 746 (Pa. 1995).

[36] *Id.* at 745–46 (citations omitted).

[37] *See* Deed to 871 N. 20th Street [Doc. No. 45] at 20–22. Plaintiff also testified in his deposition that the deed to the 871 House did not include the 869 Lot. *See* Watkins Dep. [Doc. No. 50-2] at 23–24.

matter of law, that an adverse possession claim of his father, Watkins, Sr., has been transferred to him, or that his claim may be tacked on to that of his father's.[38] However, this conclusion does not end the inquiry.

### B. Defendant has not shown that summary judgment is appropriate as a matter of law

Defendant argues that summary judgment should be granted because Plaintiff cannot establish 21 years of continuous or exclusive possession of the 869 Property. Defendant first argues that Plaintiff cannot establish 21 years of possession because Plaintiff's possession did not begin until 2005 when Watkins, Sr. conveyed an interest in the 871 House.[39] As discussed above, the title of the 871 House does not describe or mention the 869 Lot. Therefore, the Court cannot conclude as a matter of law that Plaintiff's possession began in 2005.[40]

Plaintiff claims that his possession of the 869 Lot began before 2005. For example, Plaintiff testified at deposition that he possessed the gate's keys earlier than 2005, and from 2001 to 2005, he stored his hot dog cart on the property.[41] Although Plaintiff's claim that his possession began in 1980,[42] when he was ten years old, is unreasonable, the record is unclear as to a specific date as to when Plaintiff's alleged possession began.

When considering summary judgment, a court must make every reasonable inference in the non-moving party's favor and "must view the facts in the light most favorable to the non-

---

[38] The question of whether Watkins, Sr. obtained ownership of the 869 Property through adverse possession is not before the Court and the Court takes no position on it. Neither party has moved to join the estate of Watkins, Sr. as an indispensable party under Federal Rule of Civil Procedure 19.

[39] *See* Def.'s Mot. Summ. J. [Doc. No. 45] at 5.

[40] *See Baylor*, 658 A.2d at 746.

[41] *See* Watkins Dep. [Doc. No. 50-2] at 20.

[42] Amend. Compl. [Doc. No. 9] ¶¶ 10–13.

moving party."[43] Viewing the facts in this manner and making all inferences in favor of Plaintiff, the Court cannot determine, as a matter of law, that Plaintiff's possession has not met the 21 year requirement. The start of Plaintiff's possession is a material question of fact for a factfinder to decide.

Defendant next argues that Plaintiff's possession was not continuous because Plaintiff was incarcerated from 1991 to 1997 and Plaintiff lived in Virginia for nine months in 2007.[44] "[A]ctual possession of land is dominion over the land; it is not equivalent to occupancy. . . . The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day."[45] Defendant has not shown that Plaintiff left the 869 Property abandoned, or that the character of the property's use changed, during his sojourn in Virginia.[46] Accordingly, the Court cannot determine that, as a matter of law, Plaintiff's possession was not continuous for the purposes of adverse possession.[47]

Finally, Defendant argues that Plaintiff's possession was not exclusive because he shared possession of the 869 Property with his father, Watkins, Sr.[48] Defendant relies on the Pennsylvania Supreme Court's decision in *Conneaut Lake Park v. Klingensmith* for the proposition that "[e]xcept where two or more persons *jointly* claim adverse possession as cotenants, exclusive possession cannot be based on a use or occupation in common with a third

---

[43] *Hugh*, 418 F.3d at 267 (3d Cir. 2005).

[44] Def.'s Mot. Summ. J. [Doc. No. 45] at 8.

[45] *Watkins v. Watkins*, 775 A.2d 841, 846 (Pa. Super. Ct. 2001) (citations omitted).

[46] *Compare Wolf v. McCollum*, 522 S.E.2d 547, 548 (Ga. Ct. App. 1999) (holding that plaintiff abandoned the property during incarceration) *with Helton v. Cook*, 219 S.E.2d 505, 507 (N.C. Ct. App. 1975) (finding that because plaintiff's daughter looked after the property while plaintiff was incarcerated, plaintiff's possession was continuous).

[47] *See Watkins*, 775 A.2d at 846 ("The determination of what constitutes actual possession of property for purposes of adverse possession depends on the facts of each case, and to a large extent, on the character of the premises.").

[48] Def.'s Mot. Summ. J. [Doc. No. 45] at 8.

party."[49] But *Conneaut Lake Park* only applies as a bar to adverse possession when the possession is shared with a third party "who was lawfully on the property."[50] It is not clear whether Defendant is arguing that Plaintiff's claim for adverse possession is barred because his father had lawfully acquired the property,[51] but if so, the issue of Watkins, Sr.'s adverse possession, or whether Watkins Sr. and Plaintiff jointly claimed adverse possession cannot be made on the current record. The Court cannot determine that, as a matter of law, Plaintiff did not meet the exclusivity requirement.

## IV. CONCLUSION

Defendant has not shown that summary judgment is warranted. A factfinder will have to determine whether Plaintiff can meet his burden of proving that he is the lawful owner of the 869 Property through adverse possession. An order will be entered.

---

[49] *Conneaut Lake Park*, 66 A.2d at 829 (emphasis in original).

[50] *Id.*

[51] *See* Def.'s Mot. Summ. J. [Doc. No. 45] at 10 ("Here, as in *Conneaut*, Plaintiff cannot establish adverse possession because his possession was not adverse to his lawful cotenant: his father. Nothing in the record or Plaintiff's deposition testimony supports a claim that Plaintiff's . . . claim to the [869 Property] was adverse to Donald Watkins, Sr.").